UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HERNANDEZ DANIELS,

    Petitioner,

v.                                      Case No. 4:20cv578-WS-HTC

RICKY D. DIXON,[1]

    Respondent.
_____/

ORDER AND REPORT AND RECOMMENDATION

Petitioner Hernandez Daniels, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254, challenging his conviction for first degree murder in the circuit court of Gadsden County, Florida, case 2005-CF-844. ECF Doc. 1. After considering the petition, the record, the State's response, ECF Doc. 8, and Petitioner's reply, ECF Doc. 13, the undersigned recommends the petition be DENIED without an evidentiary hearing.

I.    BACKGROUND

    A.    **Offense and Conviction**

On August 3, 2002, at 4:59 a.m., the Havana Police Department received a call that a woman, later identified as Constance Dupont ("Dupont"), had been shot

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d).

several times in the upper torso. ECF Doc. 8-2 at 84-87. No fingerprints or DNA evidence identified the killer, although the ballistics showed that a single gun fired all the shots. As described below, Petitioner was eventually charged with and convicted of hiring someone to kill Dupont because she acted as an undercover informant against him.

On July 2, 2002, the victim, Dupont, was a passenger in a car driven by Anna Chukes when it was pulled over and found to contain drugs. *Id.* at 938-40. Dupont told investigators that the drugs belonged to Chukes and agreed to testify against her. *Id.* Also, Dupont began working with law enforcement in return for payment, making controlled buys throughout the month of July from Petitioner, who she identified to law enforcement as a drug supplier. ECF Doc. 8-1 at 938-44. On July 31, 2002, Chukes bonded out of jail and began telling people associated with Petitioner that Dupont was a "snitch." ECF Doc. 8-2 at 314.

Also, Raima Green, a cousin of Dupont and friend of Petitioner before Dupont's death, told investigators that Petitioner suspected Dupont of being a snitch on August 1, 2002. *Id.* at 101-02. On August 2, 2002, Petitioner told Green to call a number supposedly belonging to Dupont while he listened. When a voice she deemed belonged to a white male answered, she hung up. *Id.* 103-04. On August 2, 2002, during a controlled call from Dupont to Petitioner, he refused to set up the meeting place for a previously discussed transaction. ECF Doc. 8-1 at 974.

As described below, Dupont was likely killed in the early morning hours of August 3, 2002. Witnesses testified Dupont was alive in her apartment at around 3:30 a.m. on August 3, 2002. ECF Doc. 8-2 at 44 (testimony of Flozell Walker) and 51 (testimony of Greg Carter). Also, at around 3:48 a.m., Petitioner's brother, Delovontez Washington, called police and told them that four white males were at a store across town from Dupont's apartment acting suspiciously. ECF Doc. 8-2 at 5-6. Washington, however, refused to give law enforcement his phone number and gave them a fake name. When police responded, no white males or suspicious activity was found. *Id.* at 81 & 89. Minutes later, though, neighbors reported hearing seven (7) shots being fired in rapid sequence at 3:52 a.m. in the direction of Dupont's apartment complex. *Id.* at 82. At 4:59 a.m., a neighbor called police to report he had walked by Dupont's apartment, looked in the window, and discovered her lying in a pool of blood. *Id.* at 62-64.

Because of Dupont's involvement with the controlled buys from Petitioner, and because Dupont had previously been involved with Petitioner's brother, the investigation soon focused on Petitioner.[2] *Id.* at 263-64. After his arrest by federal authorities, investigators began hearing from inmates who reported Petitioner and a

---

[2] At the same time, federal authorities were also investigating Petitioner for drug offenses. Petitioner was arrested by federal authorities on March 11, 2003. *United States v. Daniels*, 4:03-cr-00016 (N.D. Fla.), ECF Doc. 13 (Notice of Execution of Arrest Warrant March 12, 2003). He was convicted and sentenced to life imprisonment. *United States v. Daniels*, *supra*, ECF Doc. 94 (Judgment after remand, March 31, 2006).

Case No. 4:20cv578-WS-HTC

partner named Fernando "Wolf" Taylor told them about their involvement in the killing.

On July 18, 2003, investigators interviewed Gary Joseph, an inmate who met Petitioner at the Federal Detention Center ("FDC") in Tallahassee and had spoken with Petitioner about the killing of Dupont. Joseph testified[3] that when he told Petitioner an informant had set up Joseph, Petitioner asked him why he had not killed that informant. Petitioner then started telling Joseph about the informant in his own case, said that "without an informant no case," so that was why Petitioner had to "kill that bitch." ECF Doc. 8-2 at 373-74.

At trial an inmate named Willie Nelson testified he met Petitioner in 2004 at FDC and Petitioner told him that he hired a paid killer named "Wolf" (identified by Petitioner as Fernando Taylor, ECF Doc. 1-1 at 6-7) to shoot a girl named "Constance" because she had been an informant against him. ECF Doc. 8-2 at 512-15. Nelson contacted his lawyer, who discovered the unsolved murder of Constance Dupont in Gadsden County, Petitioner's hometown. *Id.* at 516. Nelson then contacted state law enforcement and told them about Petitioner's statements, seeking to get a reduction in his sentence. *Id.* at 519.

FDC inmate John Miller testified at trial that he had previously told investigators that Petitioner confessed to him and Nelson while at FDC to hiring

---

[3] Because Joseph had died by the time of the trial, the court allowed the State to read his testimony from Petitioner's federal drug trial. ECF Doc. 8-2 at 398.

Case No. 4:20cv578-WS-HTC

Fernando "Wolf" Taylor to murder Dupont. ECF Doc. 8-2 at 549-50. At trial, however, he recanted and claimed he said that to the investigator because the investigator told him to say that to get a sentence reduction deal. *Id.* at 559.

Jason Shoats testified that he also met Petitioner at FDC Tallahassee in November 2006, and, when Shoats told Petitioner that a witness on his own case was in a nearby pod, Petitioner volunteered that he himself had a witness in his case but that he "had a partner of [his] named Wolf take care of it for [him]." ECF Doc. 8-2 at 595.

Laquinton Perry testified at trial that he had known Fernando "Wolf" Taylor from Havana, Florida, before the two of them were in the Gadsden County jail at the same time. Perry testified that Taylor admitted being involved with the Dupont killing, saying he regretted killing Dupont and got paid "five" for killing her. *Id.* at 635.

Petitioner was found guilty and sentenced to life in prison.

B.   **Postconviction History**

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

28 U.S.C. § 2244(d)(1)(A).[4]  Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Petitioner appealed his judgment to the First District Court of Appeals ("First DCA"), which affirmed *per curiam* without a written opinion on September 28, 2010. *Daniels v. State*, 46 So. 3d 49 (Fla. 1st DCA).  He sought discretionary review in the Florida Supreme Court, which dismissed the petition for lack of jurisdiction on November 29, 2010.  *Daniels v. State*, 50 So. 3d 603 (Fla.).  He did not seek certiorari review from the United States Supreme Court, so the judgment of conviction became final on Monday, February 28, 2011 (because the 90th day was Sunday).  *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) (In case where Florida Supreme Court denied review and then denied a motion for rehearing, "Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing.  The statute of limitations should have begun to run, therefore, on March 13, 1997," which was after the 90-day period for seeking cert. in the US Supreme Court expired).

The AEDPA one-year limit began running the next day and ran until September 9, 2011 (192 days), when Petitioner filed a motion for postconviction

---

[4] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

Case No. 4:20cv578-WS-HTC

relief under Florida Rule of Criminal Procedure 3.850. *See* ECF Doc. 8-3 at 151. The post-conviction motion was continuously pending through an amendment,[5] an evidentiary hearing,[6] an order denying,[7] a belated appeal, the First DCA's order affirming the denial,[8] the Florida Supreme Court's order dismissing a petition for review, *Daniels v. State*, 2020 WL 6575056 (Fla.), and the United States Supreme Court denying his petition for writ of certiorari on February 22, 2021, *Daniels v. Fla.*, 141 S. Ct. 1415 (2021). The instant petition was filed before then, on December 6, 2020, which was well before 365 un-tolled days had run on the AEDPA clock. Therefore, the petition was timely filed.

## II. LEGAL STANDARDS

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

---

[5] ECF Doc. 8-3 at 77-131.
[6] The transcript of the July 22, 2016, hearing begins at ECF Doc. 8-3 at 407.
[7] ECF Doc. 8-3 at 513.
[8] ECF Doc. 8-3 at 698.

Case No. 4:20cv578-WS-HTC

This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id*. A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III. DISCUSSION

Petitioner raises two grounds for relief. The first is based on *Brady v. Maryland*.[9] The second is an ineffective assistance of counsel claim based on counsel's failure to call an alibi witness. As discussed below, the undersigned finds Petitioner fails to meet his burden of showing that the state court rulings denying relief on those grounds were contrary to or an unreasonable application of federal law or were based on an unreasonable factual finding in light of the evidence developed in state court.

### A. Ground One: Trial Court Error in Rejecting Petitioner's Claim based on *Brady v. Maryland*.

In Ground One, Petitioner argues the State failed to disclose all *Brady* material. Specifically, Petitioner contends the State failed to produce two cardboard notebook backs that contained Nelson's handwritten notes of his conversations with Petitioner, which were maintained by the Florida Department of Law Enforcement (Item 61). ECF Doc. 1 at 6. Petitioner's argument, however, is belied by the record.

To establish a *Brady* violation, the defendant must show that: (1) the prosecution possesses evidence, including impeachment evidence; (2) the defendant does not possess the evidence, nor could he obtain it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

Case No. 4:20cv578-WS-HTC

outcome of the proceedings would have been different. *See United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (per curiam); *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Other than the first element, that the prosecution possessed the notebook backs, Petitioner cannot make any of the other showings because the State *did* disclose the notebook backs.

As the circuit court noted when it denied relief on this ground, at the evidentiary hearing, counsel testified he received the FDLE Report on May 22, 2006, *id.* at 460-61, and that he did not consider there to be any *Brady* violation. In fact, counsel testified the defense was "aware of what Mr. Nelson was going to be testifying about, and his notes." ECF Doc. 8-3 at 461-62. Counsel further testified the State had not engaged in any discovery violations, and if it had he "would have been all over it." ECF Doc. 8 at 30. While counsel could not say he specifically received "cardboard" notes, he recalled getting "everything at the time of the trial" and having "the documents in order to cross examine the witnesses that the State put on." *Id.* Although Petitioner testified at the evidentiary hearing that he had not received the notebook backs, Petitioner has not presented clear and convincing evidence to rebut the circuit court's contrary factual determination. *See* 28 U.S.C. § 2254(e)(1).

Even were Petitioner able to show he did not get the notebook backs, he has not shown a reasonable probability exists that the notebook backs would have changed the outcome of the proceedings. First, Petitioner testified at the evidentiary

hearing he does not know what was in the notes, and, thus, offers nothing more than speculation that the notes would have been contrary to Nelson's testimony. In fact, in his memorandum supporting the petition, Petitioner contends the notebooks should have been produced "regardless of their favorable or unfavorable content," and, once again, acknowledges he does not know what is in the notes. *See also,* ECF Doc. 1-1 at 16. "A court cannot speculate as to what evidence the defense might have found if the information had been disclosed." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). Regardless, Nelson was not the only inmate who testified about Petitioner's involvement with Dupont's murder. Thus, even without Nelson's testimony, there was sufficient evidence from which the jury could find Petitioner had hired Wolf to murder Dupont. Finally, as stated above, defense counsel clearly stated he had everything he needed to sufficiently cross-examine the State's witnesses.

Petitioner is not entitled to habeas relief on this claim.

### B. Ground Two: IATC for Failure to Call Renardo Daniels as an Alibi Witness

In Ground Two, Petitioner argues that trial counsel was ineffective for failing to call his brother, Renardo Daniels, as an alibi witness at Petitioner's trial. At the evidentiary hearing, Renardo Daniels told the court that if he had been called to testify at trial, he would have testified that Petitioner was not in Gadsden County when Dupont died because that night the two of them were delivering

pharmaceutical and medical supplies in Leon County and they were on camera at a nursing home one hundred miles away making their last delivery of the night. ECF Doc. 8-3 at 430.

An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

To show counsel's performance was unreasonable, a defendant must show "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted). It is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy. *Harrington*, 562 U.S. at 111. To establish prejudice, a defendant must show, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F. 3d 1248 (11th Cir. 2020) (quoting

Case No. 4:20cv578-WS-HTC

*Harrington*, 562 U.S. at 112). A petitioner must allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations of prejudice are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Applying *Strickland*, the circuit court denied relief on this ground because defense counsel's decision to not pursue a theory of defense based on alibi was a strategic choice that was reasonable under the facts of the case. ECF Doc. 8-3 at 514-17.[10] This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

At the evidentiary hearing on Petitioner's motion for postconviction relief, defense counsel testified he had two theories of defense: (1) the crime was committed by one person and (2) someone else, namely Chukes, wanted Dupont dead. Counsel did not see the need to call an alibi witness to support either theory. Moreover, an alibi witness would not refute the State's theory of the case, which was that Petitioner was a principal to murder, not the actual killer. ECF Doc. 8-3 at 453.

---

[10] Because the First DCA affirmed the state court's denial of the motion without a written opinion, and the Supreme Courts of Florida and of the United States also did not elaborate their reasoning, the Court will "look through" those decisions to the state court's 3.850 order denying relief for the state's rationale. *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018).

Case No. 4:20cv578-WS-HTC

As counsel explained, it did not matter if Petitioner was not in Gadsden County at the time of Dupont's murder. *Id.* at 454-55. Given the State's theory, counsel focused, instead, on trying to convince the jury that Chukes, who also was angry with Dupont for being a witness against her around the time of the murder, was the real shooter. ECF Doc. 8-3 at 453.

As the state court concluded, counsel's reasoned decision to pursue a defense theory that did not require an alibi witness was not ineffective. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. Thus, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess." *Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)).

Given the deference to be accorded to trial counsel's strategic decisions, the state court did not err in denying relief on this ground. Also, because the existence of an alibi would do little to undercut the prosecution's theory of the case, Petitioner cannot show a "reasonable probability" that, had counsel called the alibi witness,

Case No. 4:20cv578-WS-HTC

"the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, Petitioner is not entitled to habeas relief because he cannot show counsel's performance was deficient.

## IV. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

Case No. 4:20cv578-WS-HTC

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, is ORDERED:

1. The clerk shall substitute Ricky D. Dixon as the Respondent.

It is also respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Daniels*, 2005-CF-844, in Gadsden County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

Case No. 4:20cv578-WS-HTC

3.   That the clerk be directed to close the file.

At Pensacola, Florida, this 2nd day of February, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.